UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES MICHAEL FITZPATRICK,

                 Plaintiff,

v.

BRIDGESTONE RETAIL OPERATIONS,
LLC d/b/a FIRESTONE COMPLETE AUTO
CARE, and DOROTHY HART WILSON,
Jointly and Severally as,

                 Defendants.
_____/

Case No. 18-12576

District Judge Thomas L. Ludington

# ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT BRIDGESTONE'S MOTION FOR SUMMARY JUDGMENT

On July 13, 2018, Plaintiff, James Fitzpatrick, filed a complaint against Defendants, Bridgestone Retail Operations ("Bridgestone") and Dorothy Wilson, in Saginaw County Circuit Court alleging violations of the Michigan Dog Bite Statute, MCL 287.451, common law strict liability for animals with known dangerous propensities, and common law negligence regarding animal injuries. ECF No. 1. The case was removed to this Court on August 17, 2018. *Id.* Defendant Bridgestone filed a motion for summary judgment on July 12, 2019. ECF No. 28. The motion was granted as unopposed and Defendant Bridgestone was dismissed. ECF No. 33. The same day, Plaintiff filed a motion to set aside judgment because his attorney's office made a clerical calendaring error for the response date. ECF No. 34. The motion was granted, Plaintiff responded, and Defendant timely replied. ECF Nos. 45, 46, 47.

On August 16, 2019 Plaintiff filed a motion for summary judgment as to Defendant Wilson only. ECF No. 35. Defendant Wilson filed a motion for an extension of time to file her response, which was granted. ECF Nos. 39. Her response was filed on September 10, 2019. ECF Nos. 41,

42. Defendant Wilson subsequently furnished two additional responses to the motion for summary judgment. ECF Nos. 48, 50.[1] Defendant Wilson did not seek leave to file her second or third responses, nor did she seek leave for additional time to respond. LR 7.1(c)(3); (e)(1)(B). Plaintiff did not object or move to strike any of Defendant Wilson's filings. However, Ms. Wilson is proceeding pro se.[2] In the interest of a complete record and defense by Ms. Wilson, all three of her responses will be considered.

## I.

Braxton, Ms. Wilson's dog, was born around November 2009. ECF No. 28-2 at PageID.978. Ms. Wilson believes he is an "American Staffordshire terrier [but] he might be mixed." ECF No. 28-2 at PageID.978. The dog was licensed as a "bull terrier" in 2015 by Saginaw County. ECF No. 35-3. Additionally, a rabies vaccination certificate from 2015 lists Braxton's breed as "pitbull." ECF No. 35-4. He is a "midsize dog." ECF No. 35-10 at PageID.1295.

### A.

On June 30, 2018, Ms. Wilson had a tire blowout while driving on I-675 near Saginaw, Michigan and needed new tires. ECF No. 28-2 at PageID.1000. She arrived at the Saginaw Bridgestone store between noon and 5pm. ECF No. 35-12 at PageID.1303; ECF No. 35-13 at PageID.1305. She testified it was "about 100 degrees in Saginaw" and her dog was in the car. ECF No. 28-2 at PageID.1001-1002; ECF No. 28-5 at PageID1146. Ms. Wilson testified she was not allowed to keep her dog in the car while the shop was working on the vehicle. ECF No. 28-2 at

---

[1] Defendant Wilson's third response included a video file on a CD. The documents were docketed by the clerk's office and the CD returned to Ms. Wilson. *See* ECF Nos. 52, 53.

[2] On September 5, 2019, Defendant Wilson filed a motion seeking an extension of time "because I did hire an attorney, Paul Beggs of Begg's Law Firm over a year ago. Mr. Beggs assured me multiple times that he was taking care of this matter before you for me. . . . Mr. Beggs has not filed to appear on this case in my behalf [despite a $3,000 retainer]." ECF No. 39. Her motion for an extension of time to respond was granted and she was given until October 4, 2019 to retain new counsel. ECF No. 42. However, no counsel has filed an appearance and she is proceeding pro se.

PageID.1056. She entered the store without her dog and asked a Bridgestone employee, Kent Meyer, if she could bring her dog into the store. ECF No. 35-10 at PageID.1296, 1297. She was told "as long as you keep the dog under your control and have a leash for it and it's not disruptive, or anything like that, it's under your control." ECF No. 35-10 at PageID.1296. Mr. Meyer did not ask Wilson about the dog, its history, or personality. ECF No. 35-10 at PageID.1296. In the past, Bridgestone has allowed customers' "dogs in the store at other times where . . .nothing has ever happened." ECF No. 28-5 at PageID.1146.

Other witnesses testified to the high temperatures that day. Mr. Meyer testified the temperature was "like mid 90s outside." ECF No. 35-10 at PageID.1296. A customer witness testified it was "warm . . . a little windy . . . probably up in the high 60's, mid 60's [and] sunny." ECF No. 35-12 at PageID.1303. A second customer witness testified it was a "[s]unny, summer day" that was "warm." ECF No. 35-13 at PageID.1306. The National Weather Service recorded a high of 91 that day. ECF No. 50 at PageID.1762-1764.

**B.**

Throughout her tire appointment, "[t]he dog stayed underneath [Wilson's] chair the entire time she was there. There was nothing threatening about the dog in any way that it appeared." ECF No. 35-10 at PageID.1297; ECF No. 35-11 at PageID.1300-1301. Throughout the four hours, the furthest distance between Ms. Wilson's hand and the dog's harness was 1.5 feet. ECF No. 28-2 at PageID.1066. According to a customer witness who observed Ms. Wilson and her dog for an hour, the "dog was very well-behaved." ECF No. 35-12 at PageID.1303. The dog was on a thicker leash that "she was holding [] tight to her side." ECF No. 35-12 at PageID.1303. The leash was "wrapped around her hand [at all times] because the dog was really close to her side." ECF No. 35-12 at PageID.1303. Wilson testified that her dog had a "full harness and then a choke chain . . . where

he had no extra room." ECF No. 28-2 at PageID.1004. Ms. Wilson was the only one who held onto the leash the entire four hours. ECF No. 28-2 at PageID.1040-1041; ECF No. 28-3 at PageID.1099; ECF No. 28-5 at PageID.1151. At some point during the four hours, Defendant Wilson became sleepy, but she was not "zonked out." ECF No. 28-6 at PageID.1168.

**C.**

Plaintiff and his mother drove separate vehicles to Bridgestone. Plaintiff intended to drop off one vehicle and leave with his mother in the second vehicle to eat dinner while the first vehicle was being serviced. ECF No. 35-13 at PageID.1305. Ms. Wilson was at a kiosk speaking with Mr. Meyer paying for her tires when Plaintiff arrived. ECF No. 28-2 at PageID.1003-1004. There was about 10 to 15 feet between the front door and the kiosks inside the store. ECF No. 35-13 at PageID.1305. Wilson had the dog close to her knee and the leash wrapped around her hand "because . . . somebody else could have walked in with a dog or something." ECF No. 28-2 at PageID.1035. Plaintiff disputes that and testified that he saw the leash "close to the ground." ECF No. 28-3 at PageID.1094. However, Plaintiff agreed that there was a "foot, maybe less" between the dog and Ms. Wilson. ECF No. 28-3 at PageID.1096.

Plaintiff testified that he "[w]alked up to the kiosk to drop [his] keys off and there's a dog standing there in front of the kiosk with Mrs. Wilson, and I acknowledged the dog and looked up to say something to [Mr. Meyer] and then I was bit." ECF No. 35-13 at PageID.1306. It took less than ten seconds from when he entered the store until the dog bit Plaintiff. ECF No. 35-13 at PageID.1306; ECF No. 28-5 at PageID.1152. The dog did not bark or growl when Plaintiff walked into the store. ECF No. 35-13 at PageID.1307.

Plaintiff did not ask permission to pet or approach the dog. ECF No. 35-13 at PageID.1307. When he approached the kiosk, he testified that "[t]he dog was looking at me. I put my hand down

cautiously so it could sniff it or not and looked back up at [Mr. Meyer] and it bit me." ECF No. 35-13 at PageID.1307. Plaintiff reached out his right hand with his palm facing the ground. He did not crouch or bend down toward the dog in any way. ECF No. 35-13 at PageID.1308. Plaintiff testified that his hand was about a foot from the dog. ECF No. 35-13 at PageID.1308. Plaintiff believes he retracted his hand from the dog before he looked back up at Mr. Meyer. ECF No. 35-13 at PageID.1308. However, both Mr. Meyer and a customer testified that Plaintiff's hand was reached out when he was walking toward the dog. ECF No. 28-5 at PageID.1152; ECF No. 28-6 at PageID.1164. The dog bit Plaintiff on his right thigh for about three seconds. ECF No. 35-13 at PageID.1308. Plaintiff never spoke with Ms. Wilson before her dog bit Plaintiff. ECF No. 35-13 at PageID.1307.

Plaintiff does not believe Ms. Wilson attempted to remove the dog from him. ECF No. 35-13 at PageID.1309. However, a store customer testified that "Dorothy grabbed onto him and was like -- she grabbed him real close and then that just kind of ended it right there." ECF No. 28-6 at PageID.1165. The dog's bite broke Plaintiff's skin. ECF No. 35-13 at PageID.1309.

After being bit, Plaintiff immediately ran to the bathroom to check his leg. He testified that his scrubs were torn and had multiple tears about a half inch long. ECF No. 35-13 at PageID.1309. He explained he was not offered first aid by Bridgestone, but he also admitted he did not ask for Mr. Meyer. ECF No. 35-13 at PageID.1309. Plaintiff attempted to obtain an incident form from Bridgestone, but was told they only had forms for employees. ECF No. 35-13 at PageID.1309. He walked outside and obtained Ms. Wilson's contact information before being driven by his mother to the hospital. ECF No. 35-13 at PageID.1309.

Ms. Wilson and Mr. Meyer testified that when Plaintiff was in the bathroom evaluating his leg, Ms. Wilson exited the store at Mr. Meyer's request and put the dog in her vehicle. ECF No.

35-13 at PageID.1310; ECF No. 28-2 at PageID.1005; ECF No. 28-5 at PageID.1148. However, a customer testified that Wilson still had the dog in the store after Plaintiff left the bathroom. ECF No. 28-6 at PageID.1165. Plaintiff testified that he was in a lot of pain and "there was no concern, zero point zero, about me, none." ECF No. 35-13 at PageID.1310. Plaintiff also testified that Ms. Wilson told him that "her dog had never done anything like that before." ECF No. 35-13 at PageID.1310. Because of his discussion with Ms. Wilson after the incident, Plaintiff believes Ms. Wilson is not "mentally stable." ECF No. 35-13 at PageID.1311. He elaborated that "[s]he sent a lot of bizarre things to me, and she thinks there's a conspiracy that involves Covenant and the government and she believes the government's covering up some sort of experiments on people or something." *Id.*

Plaintiff immediately went to Covenant emergency room where they "prescribed antibiotics and pain medication." ECF No. 35-13 at PageID.1311. Plaintiff indicated his pain was a 9 or 10 on a scale of 10. ECF No. 35-13 at PageID.1311. Three or four hours later, Plaintiff was home, had changed into shorts and his mother noticed his wound had changed drastically, so they returned to the emergency room. ECF No. 35-13 at PageID.1311. After returning to the hospital, Plaintiff received emergency debridement surgery for necrotizing fasciitis, a flesh eating bacteria. ECF No. 35-13 at PageID.1311. He was hospitalized for three days and had a vacuum seal on his wound for a couple of months. ECF No. 35-13 at PageID.1312. As of the date of his deposition, the wound on Plaintiff's leg had closed but had not fully healed. ECF No. 28-3 at PageID.1103.

**D.**

Mr. Meyer testified that he did not do anything to ensure the dog was restrained other than confirming that Ms. Wilson had a leash on the dog. ECF No. 28-5 at PageID.1150.

One witness was asked at the end of her testimony if she wanted her testimony to help Ms. Wilson. She responded, "I want it to – sure, I want to help her. I don't want like anything to happen to her or her dog. It's just a sad situation for both sides." ECF No. 28-5 at PageID.1171. However, she also testified that her desire to help Defendant Wilson did not impact the truthfulness of her testimony. ECF No. 28-6 at PageID.1171.

**E.**

In 2016 Braxton bit a minor child, Ms. Wilson's step-grandson. ECF No. 35-5. Ms. Wilson averred in an affidavit that her grandson, Will, "kind of jumped around the small sofa and down on the floor in front of the dog. The dog snapped at him when he got down on the floor in front of the dog eating a bone. I didn't have time to say 'get off the floor' as I have repeatedly told him in past not to get in the dog's face especially when eating. As soon as Will said 'he bit me,'" she and her step-daughter (Will's Mom) assisted Will and drove him to the hospital. ECF No. 35-5 at PageID.1270. Ms. Wilson testified that Will was on the floor and nose-to-nose with the dog when he was bit. ECF No. 28-2 at PageID.990. She was counseled by the Count Animal Control Officer to have her dog euthanized after the incident. ECF No. 35-7 at PageID.1283; 28-7 at PageID.1182. However, she testified that she did not euthanize Braxton after the incident despite his Mother's desire to have the dog put down because Wilson "told Will [she] would leave it up to him, because Will was saying he didn't want anything to happen to Brax." *Id.* at PageID.1271.

Will was 10 or 11 at the time of the incident. ECF No. 35-6 at PageID.1274-1275. Will testified that the dog was "just laying down . . . on the floor" before the incident. ECF No. 35-6 at PageID.1277. He "went to pet [the dog] and it turned around and bit [his] bottom lip." ECF No.

35-6 at PageID.1274. He testified that he was not jumping up and down beforehand. *Id.* Will has had two surgeries on his lip as a result of the incident and according to his Mother, he has not completed treatment for the bite to date. ECF No. 35-6 at PageID.1276-1277. At the end of the deposition Ms. Wilson asked Will on the record whether he knew that she loves him, referred to all the fun times they had together, and asked if he remembered that he was bouncing on the couch and that he was face to face with the dog before the incident. *Id.* at PageID.1279-1281.

In 2011, Wilson's dog had an altercation with another dog. ECF No. 28-2. Ms. Wilson testified that the other dog went after her, knocked her to the ground, and "Braxton came back and basically protected me." ECF No. 28-2 at PageID.985. When Wilson could not separate the dogs, she got a shotgun, fired a warning shot, and then fatally shot the other dog. ECF No. 28-2 at PageID.985. She was charged with violating of MCL § 750.50B (kill/torture animals) and § 750.227B-A (possession of a firearm in the commission of a felony). ECF No. 35-8 at PageID.1284; ECF No. 35-9 at PageID.1286. The charges were nolle prossed after a one year unsupervised and non-reporting delayed sentencing. ECF No. 335-9.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

Plaintiff alleges violations of Michigan's dog bite statute, common law strict liability, and common law negligence against Defendant Wilson. ECF No. 1 at PageID.16-23.

### A.

Plaintiff first alleges Defendant Wilson violated Michigan's dog bite statute, MCL § 287.351. ECF No. 1 at PageID.16. MCL 287.451 states,

> (1) If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.
> (2) A person is lawfully on the private property of the owner of the dog within the meaning of this act if the person is on the owner's property in the performance of any duty imposed upon him or her by the laws of this state or by the laws or postal regulations of the United States, or if the person is on the owner's property as an invitee or licensee of the person lawfully in possession of the property unless said person has gained lawful entry upon the premises for the purpose of an unlawful or criminal act.

"The purpose of the dog-bite statute appears to be to hold the owner of a dog liable for bite injuries to a lawful victim who did not provoke the dog." *Koivisto v. Davis*, 745 N.W.2d 824, 828 (Mich. Ct. App. 2008). The only defense to the dog bite statute is provocation. *Nicholes v. Lorenz*, 211 N.W.2d 550, 551 (Mich. Ct. App. 1973) (affirmed *Nicholes v. Lorenz*, 237 N.W.2d 468 (Mich. 1976)). "Contributory negligence is not a defense, except as the negligence might bear on provocation." *Id.* The Michigan Court of Appeals has held that the "question of provocation is a question of fact to be determined by the jury on the basis of the circumstances of each case." B*rans v. Extrom*, 701 N.W.2d 163, 166–67 (Mich. Ct. App. 2005).

If an individual responds or reacts "to a dog's vicious and aggressive behavior[, that] does not constitute provocation under MCL 287.351(1) because a dog behaving in that manner is already in a provoked state." *Koivisto v. Davis*, 745 N.W.2d 824, 829 (Mich. Ct. App. 2008). The definition of provocation "focuses on the nature of the act itself and the relationship between that act and an outcome. Thus, an unintentional act could constitute provocation within the plain meaning of the statute because some actions, regardless of intent, may be more than sufficient to relieve a dog owner of liability." *Brans,* 701 N.W.2d at 165–66. Accordingly, "[t]he intent of the victim is immaterial" to the determination of provocation. *Id.* at 166.

The Michigan Court of Appeals has found that a child's "act of picking up [a] ball, which was not directed at [the dog] or in his direction, would not amount to provocation." *Bradacs v. Jiacobone*, 625 N.W.2d 108, 112 (Mich. Ct. App. 2001). However, when a child accidentally stepped on a dog's tail, it raised the defense of provocation and the Michigan Court of Appeals held that was sufficient to submit the question to the jury. *Nicholes*, 211 N.W.2d at 551. The Michigan Supreme Court has also held that a trial judge did not abuse his discretion to order a new trial when a jury decided a dog was provoked when a child attempted to hug the dog (but had not yet touched it). *Palloni by Palloni v. Smith*, 429 N.W.2d 593 (Mich. 1988); *Palloni v. Smith*, 421 N.W.2d 699 (Mich. Ct. App. 1988) (reversed by 429 N.W.2d 593).

In this case, Plaintiff walked up within a few feet of the dog, did not ask Wilson if he could pet or interact with the dog, and stuck out his hand within one foot of the dog for it to sniff. That behavior does not rise to the clear level of provocation such as when the individual accidentally stepped on a dog's tail prior to being bitten. However, Plaintiff did approach the dog and intended to interact with the dog when he extended his hand toward the dog for him to sniff. Michigan courts have held that provocation is a question of fact. In this case, there are simply insufficient

facts to determine that there was no genuine issue of material fact that Plaintiff did not provoke the dog. Accordingly, Plaintiff's motion for summary judgment on Count I will be denied.

**B.**

In Plaintiff's second count, he alleges Defendant Wilson violated the common law strict liability for animals with dangerous propensities. ECF No. 1 at PageID.18. The Michigan Supreme Court has held that "[s]trict liability attaches for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal, (2) one has scienter of the animal's abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known." *Trager v. Thor*, 516 N.W.2d 69, 72–73 (Mich. 1994).

> The burden of the loss under the common-law rule is instead allocated on an equitable basis to the party who has introduced the potential danger into the community, and either knows of the animal's abnormal propensity or has had the animal long enough to be chargeable with notice of its dangerous habits. The liable party is deemed to have chosen to expose those around him to the abnormal danger posed by the animal he chooses to keep and must, as a consequence, shoulder any costs resulting from that danger.
> *Trager*, 516 N.W.2d at 100–01.

The possessor of the animal is defined either as the owner or keeper of the animal. In order for liability to attach to a keeper, the keeper must "exercise [the] dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession." *Trager*, 516 N.W.2d at 74 (quoting *Hancock v. Finch*, 9 A.2d 811, 812 (Conn. 1939)). An individual "in the position of temporary caretaker normally has no control over the ultimate question whether keeping the animal is worth the risk of exposing the community to any abnormal danger [so] it would be inequitable to subject him to the common-law strict liability claim." *Trager*, 516 N.W.2d at 74. The factfinder is to "judg[e] the action of the caretaker in light of the totality of the circumstances." *Id.* at 75. "A plaintiff need not prove that the owner or custodian knew that his or her domestic animal had already attacked human beings when unprovoked to make a prima facie

case of strict liability. However, a plaintiff must present evidence that the owner knew or had reason to know that the animal had a dangerous tendency that is unusual and not necessary for the purposes for which such an animal is usually kept." *Stoll v. Stobby*, 2008 WL 2390031 at *2 (Mich. Ct. App. June 12, 2008) (internal quotes omitted).

In this case, it is undisputed that Defendant Wilson was the possessor of the dog. There is also significant evidence that the dog has abnormal dangerous propensities. In 2016 the dog bit a minor child and in 2011 Braxton had an altercation with another dog that was serious enough that Defendant Wilson felt she needed to shoot the other dog to separate the two animals. ECF Nos. 35-5; 35-6; 28-2.The only question is whether the harm that resulted from the dog's dangerous propensity was known or should have been known. The answer is clearly yes. Based on the dog's previous behavior and the recommendation that the dog be euthanatized after her grandson was bit, Wilson was on notice of the harm that could occur (being bit) due to the dog's dangerous propensity. ECF No. 35-7 at PageID.1283.

This is a strict liability tort and Wilson's behavior guarding her dog while in the store are not relevant to whether the harm was or should have been known. Plaintiff's injury is significant. Defendant Wilson believes Plaintiff may be suffering from a parasite (ECF No. 28-2 at PageID.1017), but the timeline of the dog bite to the flesh eating bacteria wound, the location of the wound being the same as the dog bite, and the medical diagnosis of the flesh eating bacteria provide sufficient proof that Plaintiff is fighting a bacteria acquired as a result of the dog bite. ECF No. 35-13. Therefore, the fact that Plaintiff was harmed (i.e., suffered a dog bite and later a fleshing eating bacteria) is sufficient to meet the third prong of the common law tort. Plaintiff's motion for summary judgment will be granted as to Count Two. Defendant Wilson is liable to Plaintiff for the harm of the dog bite under common law strict liability.

**C.**

Plaintiff also alleges common law negligence against Defendant Wilson. ECF No. 1 at PageID.20. The Michigan Supreme Court has held that the "conclusion that there is no cause of action against a temporary caretaker of a domestic animal under a common-law strict liability theory does not preclude a negligence claim." *Trager*, 516 N.W.2d at 104. There are four elements to a Michigan negligence claim – "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000). The Court's role is to determine if duty exists. *Trager*, 516 N.W.2d at 105. The Michigan Supreme Court has held

> that in a domestic animal injury case:
>
> A negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and the injury does proximately result from the negligence. *The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen.*
>
> *Trager*, 516 N.W.2d at 106 (emphasis added); *see also Wiitanen v. Dworatschek*, 2006 WL 2521425 (E.D. Mich.) at *4.

The Michigan Supreme Court explained their reasoning as follows,

> Dogs . . . are generally regarded as so unlikely to do substantial harm that their possessors have no duty to keep them under constant control. Consequently, a mere failure to do so would not constitute breach of any duty of care. However, if the possessor of such an animal, including one in temporary possession, has knowledge of some dangerous propensity unique to the particular animal, or is aware that the animal is in such a situation that a danger of foreseeable harm might arise, the possessor has a legally recognized duty to control the animal to an extent reasonable to guard against that foreseeable danger.
> *Trager*, 516 N.W.2d at 106.

As described earlier, Defendant Wilson was on notice that her dog had dangerous propensities and she knew that her dog was in unfamiliar territory because she had never been to that Bridgestone location before. As such, according to the Michigan Supreme Court she "has a

- 13 -

legally recognized duty to control the animal to an extent reasonable to guard against that foreseeable danger." *Trager*, 516 N.W.2d at 106.

Even though Wilson had a higher standard of care in regard to her dog, she did not breach that duty on June 30, 2018. First, Wilson did not plan to bring her dog to the store. She was driving down the expressway when her tire blew out. ECF No. 28-2. She drove to the Saginaw Bridgestone store because it was nearby. The weather was sunny with a high of 91 degrees that day. She testified she was not allowed to leave her dog in the car while it was being serviced. ECF No. 28-2 at PageID.1056; ECF No. 50 at PageID.1762-1764. She went into the store without Braxton and asked a store employee whether she could bring her dog into the store. ECF No. 35-10 at PageID.1296-1297. She was granted permission and kept her dog by her side at all times. The leash was wrapped about her wrist and there was testimony that the dog was never more than 1.5 feet from her hand when she was sitting down. ECF No. 28-2 at PageID.1066; 35-12 at PageID.1303. She never had someone else watch her dog. When she was paying for her tires, she had the leash wrapped around her hand and the dog at her side. ECF No. 28-2 at PageID.1035. While it is unclear exactly how much slack was in the leash, even Plaintiff admitted the leash was not long enough to be on the floor. *Id.*; ECF No. 28-3 at PageID.1096. Plaintiff approached Defendant Wilson from behind. He did not ask her if he could interact with her dog. He walked up to drop off his keys at the kiosk and stuck his hand out within one foot of the dog instead of waiting for the employee to finish Defendant Wilson's transaction. Plaintiff has not proven that there is no genuine issue of material fact that Defendant Wilson breached her heightened duty of care of her dog. Defendant's motion for summary judgment as to Count III will be denied.

**IV.**

Plaintiff alleges two counts against Defendant Bridgestone – violations of common law negligence and premises liability. ECF No. 1. Defendant Bridgestone filed a motion for summary judgment on both counts. ECF No. 28.

**A.**

Plaintiff's first count against Defendant Bridgestone is an alleged violation of common law negligence. As discussed earlier, there are four elements to a Michigan negligence claim – "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000). Additionally, "[u]nder the doctrine of respondeat superior, an employer may be vicariously liable for the acts of an employee committed within the scope of his employment." *Ball v. Fourment*, 2017 WL 694683 at *2 (quoting *Helsel v. Morcom*, 219 Mich. App. 14, 21; 555 N.W.2d 852 (1996)).

> The Michigan Supreme Court has explained that
>
> Negligence actions in domestic animal injury cases have been recognized by the Court of Appeals, usually as an alternative theory of liability to a strict liability claim when scienter cannot be shown. We agree, and can find no reason why such a cause of action should not also be available when the defendant's possession is of such a temporary nature that he cannot be held strictly liable as a keeper. The danger of misallocation of loss, as was presented by extending strict liability to the temporary caretaker, is not present. The factfinder is instead judging the action of the caretaker in light of the totality of the circumstances.
> *Trager v. Thor*, 516 N.W.2d 69, 75 (Mich. 1994).

Defendant Bridgestone is correct that "Plaintiff must prove that Firestone was the owner or possessor of the animal" in order to prevail on a common law negligence case for a domestic animal injury case. ECF No. 28 at PageID.954. The dog is clearly owned by Defendant Wilson and she retained ownership and possession of the dog during the entirety of the four hours at Bridgestone. Mr. Meyer testified that she was allowed to bring the dog into the store as long as it

remained under her control. ECF No. 35-10 at PageID.1296. Witnesses say she never gave the leash to anyone else and she did not leave the dog unattended. ECF Nos. 28-2 at PaegID.1040-1041; 28-3 at PageID.1099; 28-5 at PageID.1151.

Plaintiff spends significant time in his response discussing the foreseeability of harm and how Defendant Bridgestone should have seen the harm that could have occurred by Wilson bringing her dog into the store. ECF No. 46 at PageID.1548-1550. However, this Court will not reach the issue of foreseeability because Defendant has clearly demonstrated it did not own or even have a temporary possessory interest in the dog – which is required for a common law negligence claim. Despite Plaintiff's contention that "[i]t does not matter whether Defendant Bridgestone had an ownership interest in Braxton or whether it was a keeper of Braxton. Its liability arises from its ability to foresee that a situation existed that gave rise to an unreasonable risk of harm, regardless of who created the risk," Plaintiff did not provide any case law for his conclusion.[3] ECF No. 46 at PageID.1550. In fact, the one case that Plaintiff cited as evidence of a case "that addresses liability arising from the awareness that an animal is in a particular situation where there is a danger of foreseeable harm," includes language that says, "*The owner* of a domestic animal who does not have knowledge of the animal's dangerous propensities may be held liable for negligently failing to restrain the animal or prevent harm by the animal." ECF No. 46 at PageID.1545; *Ball v. Fourment*, 2017 WL 694683 at *2 (emphasis added). Defendant Bridgestone was not the owner of the dog. Additionally, Plaintiff's discussion on the Saginaw Township dog ordinances and other state courts (but not Michigan's) findings that pit bulls are inherently dangerous animals is irrelevant because Bridgestone is not an owner of the dog under common law liability. Because the facts show there is not a genuine dispute of material fact that Defendant Bridgestone did not

---

[3] Plaintiff included a footnote discussing the caselaw regarding provocation – but provocation is not relevant to whether a defendant must have some possessory interest in the animal to be liable under common law negligence.

have any possession or ownership of the dog during the time it was in the store, Defendant's motion for summary judgment as to the common law negligence claim will be granted.

**B.**

Finally, Plaintiff alleges Bridgestone is liable based on premises liability theory. ECF No. 1 at PageID.27. The Michigan Supreme Court has held that "[o]wners and occupiers of land are in a special relationship with their invitees . . . . [and] [t]he possessor of land has a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams v. Cunningham Drug Stores, Inc.*, 418 N.W.2d 381, 383 (Mich. 1988). "It is well established . . . that premises liability is conditioned upon the presence of both possession and control over the land." *Kubczak v. Chemical Bank & Tr. Co.*, 757 N.W.2d 745, 747 (Mich. 1998) (internal quotations omitted). A "merchant may be held liable for injuries resulting from negligent maintenance of the premises." *Williams*, 418 N.W.2d at 383. "The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012).

> With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises *possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.*
> *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012) (emphasis added).

However, when a defect is open and obvious, the landowner does not have a duty to warn or correct the defect. *Id.* at 91. There are two situations when the open and obvious doctrine does not eliminate liability. First, "when the danger is unreasonably dangerous [and second] when the danger is effectively unavoidable." *Id.* at 96.

> If the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide.
>
> *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 187 (1995) (footnote omitted)

The Michigan Court of Appeals held in *Klimek v. Drzewiecki*, that "a loose, unsupervised and dangerous dog [not owned by defendant] either on defendant's land or in close proximity to defendant's land without any obstacle to prevent it from entering defendant's land is a 'condition on the land' as that term was used in Preston and the restatement. Defendant [] therefore owed to plaintiff and her child the duty specified in 2 Restatement Torts." *Klimek v. Drzewiecki*, 352 N.W.2d 361, 363–64 (Mich. Ct. App. 1984). The fact that the defendant owner of the property knew that his neighbor's dog had previously bit someone, was loose and unsupervised, and the child victim was outside without adult supervision contributed to the decision. *Id.* Because the injured victim was a child, the court held the homeowner to a higher standard of care, "to exercise reasonable or ordinary care to prevent injury to the child," than if the licensee were an adult. *Id.* at 364.

In comparison, in another case, the Michigan Court of Appeals held that a "dog running into or out of its master's home embodies neither an unavoidable danger nor an unreasonably high risk of severe injury." *Stoll v. Stobby*, 2008 WL 2390031 at *4 (Mich. Ct. Ap. June 12, 2008). The Michigan Court of Appeals has also held that when an owner ordered her dog to attack, "[p]remises owners generally have no duty to anticipate and prevent third parties' criminal acts. The dog was open and obvious." *Allen v. A & M Properties, Inc.*, 2011 WL 521325, at *2 (Mich. Ct. App. Feb. 15, 2011) (internal citations omitted). The court further explained that "[a] dog would not

constitute an imperfection in the property that would require mending, and in any event, the duty under MCL 554.139(1)(b) does not apply to common areas like the porch. *Id.* (internal quotations omitted). In another case where stray dogs were known to frequent a private parking lot, the court stated "we cannot conclude that a stray dog was an "unusual" condition such as would prohibit application of the open and obvious doctrine." *Tosa v. Yono*, 2008 WL 723979, at *4 (Mich. Ct. App. Mar. 18, 2008). Lastly, the court has explained that "[w]hile there is some support for the proposition that a premises-liability action may be founded on a dog's presence on the land, *Klimek v. Drzewiecki,* 135 Mich.App. 115, 119, 352 N.W.2d 361 (1984) (dog treated as a condition on the land), the duty owed by a landowner is separate and distinct from the duty owed by the dog's owner, *id.* at 118, 352 N.W.2d 361." *Hiner v. Mojica*, 722 N.W.2d 914, 922 (Mich. Ct. App. 2006).

Plaintiff did not address his premises liability claim in his response, focusing exclusively on the negligence elements. Michigan Courts have held that generally having a dog does not require the owner to exercise control at all times because most dogs are not dangerous. *Trager*, 516 N.W.2d at 106. In this case, the dog was owned by and always under the control of Defendant Wilson. Plaintiff was an adult and could see the dog. In fact, Plaintiff testified that he saw the dog upon arriving in the store. ECF No. 35-13 at PageID.1307. Instead of expressing his concerns, he walked up to within a few feet of the dog and stuck his hand out for the dog to sniff. ECF No. 35-13 at PageID.1308. Only then, did the dog bite him. Even if Bridgestone had a duty to protect Plaintiff from a customer's dog, Bridgestone's liability is overruled by the open and obvious nature of the risk. Accordingly, Bridgestone's motion for summary judgment as to the premises liability claim will be granted.

**V.**

Accordingly, **IT IS ORDERED** that that Plaintiff's Motion for Summary Judgment, ECF No. 35, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant Bridgestone's Motion for Summary Judgment, ECF No. 28, is **GRANTED**.

It is further **ORDERED** that the Complaint, ECF No. 1, as to Defendant Bridgestone is **DISMISSED WITH PREJUDICE**.

The remaining claims are Count I and III against Defendant Wilson. Damages for Plaintiff against Defendant Wilson as to liability from Count II must also be assessed.

Dated: March 11, 2020           s/Thomas L. Ludington
                                THOMAS L. LUDINGTON
                                United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Dorothy Hart Wilson,** 1000 Olive Street, Murray, KY 42071 by first class U.S. mail on March 11, 2020.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

---