UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES MICHAEL FITZPATRICK,

Plaintiff,                          Case No.  18-12576

v.                                                    District Judge Thomas L. Ludington

BRIDGESTONE RETAIL OPERATIONS,
LLC d/b/a FIRESTONE COMPLETE AUTO
CARE, and DOROTHY HART WILSON,
Jointly and Severally as,

Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION**

On July 13, 2018, Plaintiff, James Fitzpatrick, filed a complaint against Defendants,

Bridgestone Retail Operations ("Bridgestone") and Dorothy Wilson, in Saginaw County Circuit

Court alleging violations of the Michigan Dog Bite Statute, MCL 287.451, common law strict

liability for animals with known dangerous propensities, and common law negligence regarding

animal injuries. ECF No. 1. The case was removed to this Court on August 17, 2018. *Id.* Defendant

Bridgestone filed a motion for summary judgment on July 12, 2019. ECF No. 28. The motion was

granted as unopposed and Defendant Bridgestone was dismissed. ECF No. 33. The same day,

Plaintiff filed a motion to set aside judgment because his attorney's office made a clerical

calendaring error for the response date. ECF No. 34. The motion was granted, Plaintiff responded,

and Defendant timely replied. ECF Nos. 45, 46, 47. Then, on August 16, 2019 Plaintiff filed a

motion for summary judgment as to Defendant Wilson only. ECF No. 35. Ms. Wilson filed

responses. ECF Nos. 39, 41, 42. Defendant Bridgestone's motion for summary judgment was

granted and Plaintiff's motion for summary judgment against Defendant Wilson was granted in part as to Count II, but denied as to Counts I and III. ECF No. 54.

On March 25, 2020, Plaintiff timely filed a motion for reconsideration as to Defendant Bridgestone's motion for summary judgment common law negligence claim only. ECF No. 56. Defendant Bridgestone responded upon direction by this Court. ECF Nos. 57, 58, 60.

## I.

The parties do not dispute the facts, so the facts from the motions for summary judgment will be reiterated. Braxton, Ms. Wilson's dog, was born around November 2009. ECF No. 28-2 at PageID.978. Ms. Wilson believes he is an "American Staffordshire terrier [but] he might be mixed." ECF No. 28-2 at PageID.978. The dog was licensed as a "bull terrier" in 2015 by Saginaw County. ECF No. 35-3. Additionally, a rabies vaccination certificate from 2015 lists Braxton's breed as "pitbull." ECF No. 35-4. He is a "midsize dog." ECF No. 35-10 at PageID.1295.

## A.

On June 30, 2018 Ms. Wilson had a tire blowout while driving on I-675 near Saginaw, Michigan and needed new tires. ECF No. 28-2 at PageID.1000. She arrived at the Saginaw Bridgestone store between noon and 5pm. ECF No. 35-12 at PageID.1303; ECF No. 35-13 at PageID.1305. She testified it was "about 100 degrees in Saginaw" and her dog was in the car. ECF No. 28-2 at PageID.1001-1002; ECF No. 28-5 at PageID1146. Ms. Wilson testified she was not allowed to keep her dog in the car while the shop was working on the vehicle. ECF No. 28-2 at PageID.1056. She entered the store without her dog and asked a Bridgestone employee, Kent Meyer, if she could bring her dog into the store. ECF No. 35-10 at PageID.1296, 1297. She was told "as long as you keep the dog under your control and have a leash for it and it's not disruptive, or anything like that, it's under your control." ECF No. 35-10 at PageID.1296. Mr. Meyer did not

ask Wilson about the dog, its history, or personality. ECF No. 35-10 at PageID.1296. In the past, Bridgestone has allowed customers' "dogs in the store at other times where . . . nothing has ever happened." ECF No. 28-5 at PageID.1146.

Other witnesses testified to the high temperatures that day. Mr. Meyer testified the temperature was "like mid 90s outside." ECF No. 35-10 at PageID.1296. A customer witness testified it was "warm . . . a little windy . . . probably up in the high 60's, mid 60's [and] sunny." ECF No. 35-12 at PageID.1303. A second customer witness testified it was a "[s]unny, summer day" that was "warm." ECF No. 35-13 at PageID.1306. The National Weather Service recorded a high of 91that day. ECF No. 50 at PageID.1762-1764.

## B.

Throughout her tire appointment, "[t]he dog stayed underneath [Wilson's] chair the entire time she was there. There was nothing threatening about the dog in any way that it appeared." ECF No. 35-10 at PageID.1297; ECF No. 35-11 at PageID.1300-1301. Throughout the four hours, the furthest distance between Ms. Wilson's hand and the dog's harness was 1.5 feet. ECF No. 28-2 at PageID.1066. According to a customer witness who observed Ms. Wilson and her dog for an hour, the "dog was very well-behaved." ECF No. 35-12 at PageID.1303. The dog was on a thicker leash that "she was holding [] tight to her side." ECF No. 35-12 at PageID.1303. The leash was "wrapped around her hand [at all times] because the dog was really close to her side." ECF No. 35-12 at PageID.1303. Wilson testified that her dog had a "full harness and then a choke chain . . . where he had no extra room." ECF No. 28-2 at PageID.1004. Ms. Wilson was the only one who held onto the leash the entire four hours. ECF No. 28-2 at PageID.1040-1041; ECF No. 28-3 at PageID.1099; ECF No. 28-5 at PageID.1151. At some point during the four hours, Defendant Wilson became sleepy, but she was not "zonked out." ECF No. 28-6 at PageID.1168.

## C.

Plaintiff and his mother drove separate vehicles to Bridgestone. Plaintiff intended to drop off one vehicle and leave with his mother in the second vehicle to eat dinner while the first vehicle was being serviced. ECF No. 35-13 at PageID.1305. Ms. Wilson was at a kiosk speaking with Mr. Meyer paying for her tires when Plaintiff arrived. ECF No. 28-2 at PageID.1003-1004. There was about 10 to 15 feet between the front door and the kiosks inside the store. ECF No. 35-13 at PageID.1305. Wilson had the dog close to her knee and the leash wrapped around her hand "because . . . somebody else could have walked in with a dog or something." ECF No. 28-2 at PageID.1035. Plaintiff disputes that and testified that he saw the leash "close to the ground." ECF No. 28-3 at PageID.1094. However, Plaintiff agreed that there was a "foot, maybe less" between the dog and Ms. Wilson. ECF No. 28-3 at PageID.1096.

Plaintiff testified that he "[w]alked up to the kiosk to drop [his] keys off and there's a dog standing there in front of the kiosk with Mrs. Wilson, and I acknowledged the dog and looked up to say something to [Mr. Meyer] and then I was bit." ECF No. 35-13 at PageID.1306. It took less than ten seconds from when he entered the store until the dog bit Plaintiff. ECF No. 35-13 at PageID.1306; ECF No. 28-5 at PageID.1152. The dog did not bark or growl when Plaintiff walked into the store. ECF No. 35-13 at PageID.1307.

Plaintiff did not ask permission to pet or approach the dog. ECF No. 35-13 at PageID.1307. When he approached the kiosk, he testified that "[t]he dog was looking at me. I put my hand down cautiously so it could sniff it or not and looked back up at [Mr. Meyer] and it bit me." ECF No. 35-13 at PageID.1307. Plaintiff reached out his right hand with his palm facing the ground. He did not crouch or bend down toward the dog in any way. ECF No. 35-13 at PageID.1308. Plaintiff testified that his hand was about a foot from the dog. ECF No. 35-13 at PageID.1308. Plaintiff

believes he retracted his hand from the dog before he looked back up at Mr. Meyer. ECF No. 35-13 at PageID.1308. However, both Mr. Meyer and a customer testified that Plaintiff's hand was reached out when he was walking toward the dog. ECF No. 28-5 at PageID.1152; ECF No. 28-6 at PageID.1164. The dog bit Plaintiff on his right thigh for about three seconds. ECF No. 35-13 at PageID.1308. Plaintiff never spoke with Ms. Wilson before her dog bit Plaintiff. ECF No. 35-13 at PageID.1307.

Plaintiff does not believe Ms. Wilson attempted to remove the dog from him. ECF No. 35-13 at PageID.1309. However, a store customer testified that "Dorothy grabbed onto him and was like -- she grabbed him real close and then that just kind of ended it right there." ECF No. 28-6 at PageID.1165. The dog's bite broke Plaintiff's skin. ECF No. 35-13 at PageID.1309.

After being bit, Plaintiff immediately ran to the bathroom to check his leg. He testified that his scrubs were torn and had multiple tears about a half inch long. ECF No. 35-13 at PageID.1309. He explained he was not offered first aid by Bridgestone, but he also admitted he did not ask for Mr. Meyer. ECF No. 35-13 at PageID.1309. Plaintiff attempted to obtain an incident form from Bridgestone, but was told they only had forms for employees. ECF No. 35-13 at PageID.1309. He walked outside and obtained Ms. Wilson's contact information before being driven by his mother to the hospital. ECF No. 35-13 at PageID.1309.

Ms. Wilson and Mr. Meyer testified that when Plaintiff was in the bathroom evaluating his leg, Ms. Wilson exited the store at Mr. Meyer's request and put the dog in her vehicle. ECF No. 35-13 at PageID.1310; ECF No. 28-2 at PageID.1005; ECF No. 28-5 at PageID.1148. However, a customer testified that Wilson still had the dog in the store after Plaintiff left the bathroom. ECF No. 28-6 at PageID.1165. Plaintiff testified that he was in a lot of pain and "there was no concern, zero point zero, about me, none." ECF No. 35-13 at PageID.1310. Plaintiff also testified that Ms.

Wilson told him that "her dog had never done anything like that before." ECF No. 35-13 at PageID.1310. Because of his discussion with Ms. Wilson after the incident, Plaintiff believes Ms. Wilson is not "mentally stable." ECF No. 35-13 at PageID.1311. He elaborated that "[s]he sent a lot of bizarre things to me, and she thinks there's a conspiracy that involves Covenant and the government and she believes the government's covering up some sort of experiments on people or something." *Id.*

Plaintiff immediately went to Covenant emergency room where they "prescribed antibiotics and pain medication." ECF No. 35-13 at PageID.1311. Plaintiff indicated his pain was a 9 or 10 on a scale of 10. ECF No. 35-13 at PageID.1311. Three or four hours later, Plaintiff was home, had changed into shorts and his mother noticed his wound had changed drastically, so they returned to the emergency room. ECF No. 35-13 at PageID.1311. After returning to the hospital, Plaintiff received emergency debridement surgery for necrotizing fasciitis, a flesh eating bacteria. ECF No. 35-13 at PageID.1311. He was hospitalized for three days and had a vacuum seal on his wound for a couple of months. ECF No. 35-13 at PageID.1312. As of the date of his deposition, the wound on Plaintiff's leg had closed but had not fully healed. ECF No. 28-3 at PageID.1103.

**D.**

Mr. Meyer testified that he did not do anything to ensure the dog was restrained other than confirming that Ms. Wilson had a leash on the dog. ECF No. 28-5 at PageID.1150.

One witness was asked at the end of her testimony if she wanted her testimony to help Ms. Wilson. She responded, "I want it to – sure, I want to help her. I don't want like anything to happen to her or her dog. It's just a sad situation for both sides." ECF No. 28-5 at PageID.1171. However, she also testified that her desire to help Defendant Wilson did not impact the truthfulness of her testimony. ECF No. 28-6 at PageID.1171.

**E.**

In 2016 Braxton bit a minor child, Ms. Wilson's step-grandson. ECF No. 35-5. Ms. Wilson averred in an affidavit that her grandson, Will, "kind of jumped around the small sofa and down on the floor in front of the dog. The dog snapped at him when he got down on the floor in front of the dog eating a bone. I didn't have time to say 'get off the floor' as I have repeatedly told him in past not to get in the dog's face especially when eating. As soon as Will said 'he bit me,'" she and her step-daughter (Will's Mom) assisted Will and drove him to the hospital. ECF No. 35-5 at PageID.1270. Ms. Wilson testified that Will was on the floor and nose-to-nose with the dog when he was bit. ECF No. 28-2 at PageID.990. She was counseled by the County Animal Control Officer to have her dog euthanized after the incident. ECF No. 35-7 at PageID.1283; 28-7 at PageID.1182. However, she testified that she did not euthanize Braxton after the incident despite his Mother's desire to have the dog put down because Wilson "told Will [she] would leave it up to him, because Will was saying he didn't want anything to happen to Brax." *Id.* at PageID.1271.

Will was 10 or 11 at the time of the incident. ECF No. 35-6 at PageID.1274-1275. Will testified that the dog was "just laying down . . . on the floor" before the incident. ECF No. 35-6 at PageID.1277. He "went to pet [the dog] and it turned around and bit [his] bottom lip." ECF No. 35-6 at PageID.1274. He testified that he was not jumping up and down beforehand. *Id.* Will has had two surgeries on his lip as a result of the incident and according to his Mother, he has not completed treatment for the bite to date. ECF No. 35-6 at PageID.1276-1277. At the end of the deposition Ms. Wilson asked Will on the record whether he knew that she loves him, referred to all the fun times they had together, and asked if he remembered that he was bouncing on the couch and that he was face to face with the dog before the incident. *Id.* at PageID.1279-1281.

In 2011, Wilson's dog had an altercation with another dog. ECF No. 28-2. Ms. Wilson testified that the other dog went after her, knocked her to the ground, and "Braxton came back and basically protected me." ECF No. 28-2 at PageID.985. When Wilson could not separate the dogs, she got a shotgun, fired a warning shot, and then fatally shot the other dog. ECF No. 28-2 at PageID.985. She was charged with violating of MCL § 750.50B (kill/torture animals) and § 750.227B-A (possession of a firearm in the commission of a felony). ECF No. 35-8 at PageID.1284; ECF No. 35-9 at PageID.1286. The charges were nolle prossed after a one year unsupervised and non-reporting delayed sentencing. ECF No. 335-9.

## II.

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order within fourteen days. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Mich. Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997)). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

## III.

In his motion for reconsideration, Plaintiff argues that "This Court's adoption of Defendant's allegation that a plaintiff in a negligence case must show that the defendant was an owner or possessor is clear error, is contradictory to Michigan law, and led to this Court's improper

granting of summary judgment." ECF No. 56 at PageID.1806. In support of his argument, Plaintiff cites to *Klimek v. Drzewiecki* where a non-defendant owner or possessor of an animal was found liable for an injury caused by an animal. 352 N.W.2d 361 (Mich. App. 1984). The remaining cases cited by Plaintiff are cases discussing the general principle that a defendant may be liable for a third party's negligent or intentional conduct, but are not animal injury cases. *Johnson v. Harris*, 198 N.W.2d 409 (Mich. 1972) (landlord could be liable for attack by third party upon elderly plaintiff resident in poorly lit, unlocked vestibule to an apartment complex); *Bailey v. Schaaf*, 835 N.W.2d 413 (Mich. 2013) (holding that "a landlord has a duty to respond by reasonably expediting police involvement where it is given notice of a 'specific situation occur[ring] on the premises that would cause a reasonable person to recognize the risk of imminent harm to an identifiable invitee.'"); *Mills v. White Castle System, Inc.*, 421 N.W.2d 631 (Mich. Ct. App. 1988) (Plaintiff successfully stated a claim that restaurant owner had a duty to call police when asked to remove drunk and disorderly patrons from parking lot); *Manuel v. Weitzman*, 191 N.W.2d 474 (Mich. 1971) (bar may be liable when a patron attacked and injured fellow patron).

As this Court explained in its original order, in *Trager v. Thor*, the Michigan Supreme Court explained that

> Negligence actions in domestic animal injury cases have been recognized by the Court of Appeals, usually as an alternative theory of liability to a strict liability claim when scienter cannot be shown. We agree, and can find no reason why such a *cause of action should not also be available when the defendant's possession is of such a temporary nature that he cannot be held strictly liable as a keeper*. The danger of misallocation of loss, as was presented by extending strict liability to the temporary caretaker, is not present. The factfinder is instead *judging the action of the caretaker* in light of the totality of the circumstances.
> 516 N.W.2d 69, 75 (Mich. 1994) (emphasis added).

The Michigan Supreme Court's explanation that common law negligence claims were not replaced by statutory strict liability provides that the cause of action is available "when the defendant's

possession is of such a temporary nature," indicating that there must be some predicate of possession by the defendant in order for negligence liability to attach in a common law negligence animal injury case. The only animal injury case Plaintiff cites as evidence for this Court's error is *Klimek v. Drzewiecki*. 352 N.W.2d 361 (1984). In *Klimek*, the Michigan Court of Appeals "recognize[d] a duty on the part of occupiers of land owed to a child social guest to exercise reasonable or ordinary care to prevent injury to the child." *Id.* at 364. Specifically, they "h[e]ld that a loose, unsupervised and dangerous dog either on defendant's land or in close proximity to defendant's land without any obstacle to prevent it from entering defendant's land is a 'condition on the land' as that term was used in Preston and the Restatement." *Id.* at 363–64. Neither of those conditions – a child social guest or a loose, unsupervised (although arguably dangerous) dog were applicable in the instant case. Additionally, the other four cases Plaintiff cites do not negate this Court's previous conclusion that some type of possessory interest is required for a common law animal injury negligence case. Therefore, Plaintiff's argument for reconsideration based on these cases is insufficient.

Defendant Bridgestone in its response to the motion cites to four cases that neither Plaintiff nor Defendant Bridgestone previously cited, nor that this Court found before deciding Defendant's Motion for Summary Judgment. In *Szkodzinksi*, the Court of Appeals explained that "Under common law, the owner or keeper of an animal could be held liable only if he knew of its vicious nature. Similarly, the only possible way that defendant [the landlord] could be held liable on a common law theory would be if he knew of the dog's vicious nature." *Szkodzinski v. Griffin*, 431 N.W.2d 51, 52 (Mich. Ct. App. 1988) (citations omitted). The Court of Appeals explained a necessary element for common law negligence liability is awareness of the dog's vicious nature. However, the court did not provide any insight into the requirements of ownership or caretaker

responsibility for the dog. In *Braun v. York Properties*, the plaintiff admitted that because the landlord did not know of the dog's vicious propensities that he could not recover against the landlord. *Braun v. York Properties, Inc.*, 583 N.W.2d 503, 506 (Mich. Ct. App. June 2, 1998). Again, the court was silent on whether the landlord had to exercise some control over the dog and instead decided the case based on the fact that defendant landlord did not know about the dog's negative propensities. Third, in *Stacey v. Colonial Acres, LLC*, the court again decided the question about defendant landlord's liability on the fact that defendant landlord was unaware of the dog's dangerous propensities. 2011 WL 6268235 at *3–4 (Mich. Ct. App. Dec. 15, 2011).

A third party's knowledge of a dog's vicious propensities does not however eliminate the requirement that the defendant own or accept possessory responsibility for the dog. In *Mayle v. Fuller*, the Michigan Court of Appeals cited the Michigan Supreme Court (*Trager v. Thor*, 516 N.W.2d 69 (Mich. 1994)) for the appropriate "standard of care to non-owner caretakers of animals," again indicating that for a non-owner to be liable for negligence in an animal injury case, the defendant must be a "caretaker" of the animal. *Mayle v. Fuller*, 1999 WL 33435336 at *1–2 (Mich. Ct. App. Oct. 8, 1999). The Court of Appeals later explained that "In this case, defendants may have maintained control over the premises, but the*re was no evidence to suggest that defendants had temporary control of the dog*. In fact, defendants were at work at the time plaintiff was bitten by the dog. Moreover, even if it could be established that defendants were caretakers of the dog, it is undisputed that the dog had never bitten anyone previously and had been nothing but friendly with people." *Id. Mayle* provides further evidence that some type of control over the dog is required for a common law negligence claim.

It is possible that the Michigan Court of Appeals or Michigan Supreme Court may explicitly clarify in the future as to whether control of the dog is a necessary element of a common

law animal injury negligence case if the defendant is a landlord who knew of the dog's dangerous propensities. That said, the case law presented to this Court, especially in Plaintiff's motion for reconsideration, does not demonstrate that this Court made a palpable error in its original opinion regarding when it found that some form of ownership or control is a predicate for a common law negligence claim in animal injury cases.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 56, is **DENIED**.

Dated: April 29, 2020                                      s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to Dorothy Hart Wilson at 1000 Olive Street, Murray, KY 42071 AND C/O BY Hart,2695 S Center Rd, Saginaw MI 48609-7066 by first class U.S. mail on April 29, 2020.

                    s/Kelly Winslow
                    KELLY WINSLOW, Case Manager

---